AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF  MASSACHUSETTS _____

UNITED STATES OF AMERICA

V.

IVANICE SILVA

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER:  *05M-1036-JBD*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about    July 6 - December 6, 2004    in    Middlesex    county, in the

_____ District of    Massachusetts    defendant(s) did, (Track Statutory Language of Offense)

knowingly obtain, accept or receive forged, counterfeit, altered or falsely made immigration documents; knowingly possess an identification document or authentification feature of the United States that was stolen or produced without legal authority; and conspire to commit those offenses

in violation of Title    18    United States Code, Section(s)    1546(a), 1028(a)(6) and (f), and 371    .

I further state that I am a(n)    Special Agent ICE    and that this complaint is based on the following
                    Official Title

facts:

See attached Affidavit of Special Agent Seth Plumb

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

Signature of Complainant
SETH PLUMB

Sworn to before me and subscribed in my presence,

2/16/05
Date

at    Boston, MA
        City and State

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Judith Gail Dein
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

### AFFIDAVIT OF SPECIAL AGENT SETH PLUMB

I, Seth Plumb depose and state as follows:

1.  I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Boston, Massachusetts, and have been so employed since March 1, 2003. Prior to that date, I was a Special Agent with the Department of Justice, Immigration and Naturalization Service ("INS"), Boston, Massachusetts, and was so employed since September 1, 1997. Among other duties, I am assigned to investigate cases involving the manufacture and sale of fraudulent identity documents including counterfeit non-immigrant visas, Immigration departure records (Forms "I-94"), and counterfeit resident alien cards, which are also known as Forms I-551, or "green cards". From my training, I know that persons manufacture and distribute counterfeit non-immigrant visas, I-94s, and green cards, as well as counterfeit social security account number cards ("social security cards") and other false documentation. Such counterfeit documents are frequently sold to aliens who are illegally in the United States, who do not have permission to work in the United States, or who, because of their immigration status, are unable to obtain a driver's license issued by one of the United States. I am familiar with the various criminal statutes pertaining to the enforcement of immigration laws and which make it unlawful to manufacture and sell such documents.

2.  I have been involved in an investigation of Antonio FERREIRA, a.k.a. Luis BECKER, a.k.a. Antony CABREIRA ("FERREIRA"); Adriano X. AMARO ("AMARO"); Ivanice SILVA ("SILVA") and others, and I am familiar with the results of this

investigation to-date. Unless otherwise indicated, the information contained herein has been obtained by me during the course of the investigation, or has been communicated directly to me by other law enforcement agents working on this investigation. I have not included each and every fact known to me about the investigation, but only those facts that I believe are necessary to support this application for a Criminal Complaint.

3. The facts and circumstances of this investigation as set forth below show that there is probable cause to believe: that FERREIRA knowingly forged, counterfeited, altered or falsely made immigration documents in violation of 18 U.S.C. § 1546(a); that FERREIRA, AMARO and SILVA each possessed, obtained, accepted, or received such immigration documents knowing them to be forged, counterfeited, altered, falsely made or unlawfully obtained in violation of 18 U.S.C. §1546(a); that FERREIRA, AMARO and SILVA each knowingly possessed an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States which was stolen or produced without legal authority knowing that such document or feature was stolen or produced without such authority in violation of 18 U.S.C. §1028(a)(6); and that FERREIRA, AMARO and SILVA each conspired to commit those crimes in violation of 18 U.S.C. §§1028(f) and 371.

**GENERAL SCHEME**

4. To obtain a driver's license in the United States, aliens who are illegally within the United States will frequently

find a vendor who will provide documents that can be produced to
an issuing authority (e.g. the Registry of Motor Vehicles in
Massachusetts, or the Bureau of Motor Vehicles in Maine) to
support an application for a license.  These vendors will often
provide an array of different documents to support an application
for a license.  The documents most commonly involved are:

    A.   a counterfeit US non-immigrant visa of a
classification that will allow that person to
work in the United States;

    B.   a counterfeit Immigration departure record, Form
I-94.  The I-94 card is completed upon entry into
the United States by all persons except US
citizens, returning resident aliens, aliens with
immigrant visas, and Canadian citizens visiting
or in transit.  The form is in two parts:  an
Arrival Record, which is given to an Inspector
upon arrival to the United States; and a
Departure Record, which is stamped by the
Inspector and remains in the traveler's passport
until the traveler departs the United States.
The stamp includes the Port of Entry, the
Inspector's identification number, and the date
of arrival.  The classification and date to which
the traveler is admitted are then handwritten or
stamped on the card.  Each card contains a unique
number that relates only to that entry;

3

    C.    for aliens who do not have legitimate government-
issued identification, a counterfeit birth
certificate or other form of identification
purportedly issued in their country of birth;

    D.    other counterfeit documents used to show
residency which may include a telephone bill, a
utility bill, a lease, or a cancelled personal
check.

5.    Information from a Confidential Source identified AMARO as a person who could provide such documents. As described below, AMARO was found to work for FERREIRA, who is the manufacturer of the documents. SILVA was first believed to be only a customer of FERREIRA, but was found to be referring customers to FERREIRA and selling documents made by FERREIRA.

## SUMMARY OF INVESTIGATION

6.    On June 17, 2004, a Confidential Source (registered with ICE as SA-591-BO, and hereinafter referred to as "CS1") informed me that an individual named "Adriano" would be going to a Registry of Motor Vehicles ("RMV") in Massachusetts with a customer to obtain a Massachusetts Driver's License using false and counterfeit documents. CS1 also provided me with a cellular telephone number of 617-519-0286 for "Adriano". As described below, "Adriano" has since been identified as Adriano X. AMARO.

7.    On July 6, 2004, CS1 informed me that AMARO would be taking an individual named Ivanice SILVA to an RMV in Massachusetts to obtain a  Massachusetts Driver's License. At

approximately 12:00 noon, that same day, SILVA was observed by
ICE agents entering a blue, 1994 Dodge Caravan bearing
Massachusetts registration 67MT33.  The vehicle, occupied by
SILVA and two males, was followed, but lost in traffic on I-93,
southbound from Boston.  RMV records indicate that a MA Learner's
Permit was issued to Ivanice SILVA on July 6, 2004 using an
address of 25 Ashland St., Taunton, Massachusetts.  SILVA has
since been identified from the photo taken when that permit was
issued.

        8.   On August 16, 2004, another confidential source
(registered with ICE as SA-595-BO, and hereinafter referred to as
"CS2"), at my direction, called 617-519-0286 and was able to
arrange a meeting with AMARO on August 17, 2004, at 9:30 AM at
the Dunkin Donuts located at 220 Broadway, Somerville,
Massachusetts.  The purpose of the meeting was to arrange to
purchase fraudulent documents that could be used to support an
application for a driver's license.

        9.   On August 17, 2004, CS2 met with ICE agents to prepare
for a monitored meeting. CS2 was given a digital recording
device, a transmitter, and a Brazilian passport bearing a
photograph of CS2. (Hereinafter a monitored meeting will mean the
CS was provided with a digital recording device and transmitter).
CS2 and CS2's vehicle were searched for weapons and contraband.
CS2 was then followed by ICE agents to the Dunkin Donuts located
at 220 Broadway in Somerville, Massachusetts. At approximately
9:25 AM AMARO arrived and entered CS2's car. AMARO was driving a

brown, 1993 Mazda Protégé, bearing Massachusetts registration
39NH17. This vehicle is registered to Adriano Xavier AMARO, at
545 Main Street, Apartment 3, Medford, Massachusetts. The meeting
concluded at approximately 9:51 AM, at which time CS2 drove to a
pre-arranged meeting location for debriefing. AMARO was followed
from the meeting by ICE agents to Waite Street in Malden,
Massachusetts.

    10.   During debriefing, CS2 stated that AMARO wanted to meet
again on Thursday, August 19, 2004, at 10:00 AM at the same
location.  AMARO stated that he would have a counterfeit H-4 non-
immigrant visa in CS2's assumed name, and bearing the likeness of
CS2, ready for insertion into the passport, and have other
documents necessary to support an application for a driver's
license, (a utility bill and/or birth certificate).  AMARO told
CS2 that his fee was $1800.00, but that there would be additional
fees: $30.00 for the RMV application, $40.00 for the translation
of the birth certificate, and $180.00 for the driving school that
arranges the road test. AMARO told CS2 that he works with someone
that has been counterfeiting visas for six years, and that he
could produce any kind of visa. AMARO also claimed he could
provide green cards, social security cards, Brazilian driver's
licenses, and other identity documents. AMARO told CS2 that it is
getting difficult to go to RMVs near Boston, and that he also
takes people to Maine to get Driver's Licenses and register
vehicles. AMARO told CS2 that he does not work a regular job,
that "there is not enough money in it."

11.   On August 18, 2004, CS2 contacted me to inform me that AMARO could not meet on August 19, 2004. AMARO told CS2 that another vendor had been confronted, and his customer arrested, making AMARO apprehensive about trying to get a license in Massachusetts. AMARO said he was going to Maine on August 19, 2004, with "Toninho", the manufacturer of the documents, to obtain a Maine driver's license for another customer. On August 19, 2004, CS2 was contacted by AMARO. AMARO indicated he did not want to go to an RMV in Massachusetts. AMARO said that he could take CS2 to the Bureau of Motor Vehicles ("BMV") in Maine the following Thursday, August 26, 2004.

12.   "Toninho" has since been identified as FERREIRA (Antonio FERREIRA, a.k.a. Luis BECKER, a.k.a. Antony CABREIRA). Massachusetts drivers licenses have been issued in each of these names, and photographs from each license have been obtained from the RMV.  The photographs depict the same individual.  I have showed the Massachusetts driver's license photos of Antonio FERREIRA, Antony CABREIRA, and Luis BECKER to CS2. CS2 identified the person in all three pictures as "Toninho".

13.   On August 24, 2004, I was contacted by CS2, who informed me that AMARO had called and wanted to meet to provide a Maine driver's license study guide.  AMARO told CS2 that he was on his way to Maine with another customer and would not be able to meet until approximately 3:00 PM that day.  I instructed CS2 to call AMARO back and agree to meet that afternoon.

7

14. At approximately 2:45 PM that same day CS2 met with ICE agents to prepare for a monitored meeting with AMARO at the Dunkin Donuts at 220 Broadway in Somerville. CS2 and CS2's vehicle were searched for weapons and contraband. CS2 was then followed by ICE agents to the meeting location and, at approximately 3:24 PM, AMARO arrived driving the same car he used during the previous meeting (a 1993 Mazda Protégé, bearing Massachusetts registration 39NH17). AMARO then entered CS2's vehicle. The meeting ended at approximately 3:56 PM. AMARO and CS2 were followed away from the meeting location.

15. During debriefing, CS2 told me that AMARO intended to change his telephone number and that he gave CS2 a pager number of 617-604-0030 to contact him. AMARO told CS2 that they would be going to the BMV at Kennebunk, Maine on August 26th and to expect to be back around 2:00 or 3:00 PM. AMARO told CS2 that he would prepare the documents with an address in Kennebunk for purposes of proving residency, and that he would need an address from CS2 where mailings from the BMV could be forwarded.

16. On August 24, 2004, CS1 contacted me to tell me that SILVA would be going to the BMV at Kennebunk, Maine on the August 25, 2004, with FERREIRA. According to CS1, SILVA had failed to get a Massachusetts driver's license.

17. On August 25, 2004, I went to the BMV at Kennebunk, Maine, and observed the blue, 1994 Dodge Caravan, bearing Massachusetts registration 67MT33 near the BMV at 60 Portland Road in Kennebunk, Maine. This is the same vehicle seen

8

transporting SILVA the day she obtained a Massachusetts learner's permit.

18.   On August 26, 2004, CS2 met with ICE agents and agents of the Department of State, Diplomatic Security Service ("DSS") to prepare for the monitored meeting and trip to the BMV at Kennebunk, Maine.  CS2 was again provided with the Brazilian Passport  with a substituted picture of CS2 and $1,040.00 in cash.  CS2 and CS2's vehicle were searched for weapons and contraband.  CS2 was then followed by agents to the Dunkin Donuts located at 220 Broadway in Somerville, Massachusetts.  At approximately 7:10 AM, the blue Dodge Caravan, registration number 67MT33, arrived at the Dunkin Donuts with two occupants. One of the occupants got into CS2's car.  At approximately 7:16 AM, the Dodge Caravan and CS2's vehicle left the lot of the Dunkin Donuts.  CS2's vehicle followed the Caravan to a location on Middlesex Avenue in Medford.  After parking, CS2 and the other occupant of CS2's vehicle entered the Caravan, which was followed to the BMV at 125 Presumpscot Street, in Portland, Maine, arriving at approximately 9:33 AM. Shortly after parking, CS2 left the Caravan and entered the BMV. At approximately 10:45 AM, DSS Special Agent Aaron Arnfeld entered the BMV and spoke with a clerk. Special Agent Arnfeld obtained photocopies of a counterfeit US visa and I-94 that had been inserted into the passport provided to CS2. Special Agent Arnfeld was informed by the clerk that the application could not be accepted because CS2 did not have two forms of identification.  At approximately 12:00

noon, CS2 left the BMV and entered the Caravan. The Caravan then travelled back to CS2's vehicle on Middlesex Avenue in Medford.

19.  During debriefing, the passport and $1,000 in cash were retrieved from CS2. CS2 told me that AMARO did not bring a counterfeit Brazilian birth certificate to use as a second form of identification and that they would have to return to the BMV the following week to complete the application process. According to CS2, AMARO removed the counterfeit visa and I-94 he had provided from the passport and said that he would replace them on the next visit to the BMV. CS2 told me that it paid $40 of the original $1,040.00 to AMARO for translation of the counterfeit Brazilian birth certificate that AMARO would provide at the next meeting. CS2 also reported that the other person traveling with them was "Toninho" (FERREIRA), and that he claimed to have been producing counterfeit documents for 6 years. According to CS2, FERREIRA bragged about having earned between $5,000 and $7,000 a day when going to Massachusetts RMVs. FERREIRA said that he has all of the equipment necessary to produce the documents at his apartment and that all of his customers' information is on his computer.

20.  Transcripts of the conversations from August 26, 2004, translated from the Brazilian dialect of Portuguese into English, confirm information related to me by CS2. FERREIRA claimed to have made from $5,000 to $10,000 a day, and between $6,000 and $7,000 after expenses when getting people driver's licenses in Massachusetts. FERREIRA also describes an incident when police

10

came to his home looking for him after intercepting a Federal Express shipment from Brazil which contained blank social security cards and blank Brazilian international drivers licenses.  FERREIRA claimed to have been using another name, and that he also had a Massachusetts driver's license in this name. FERREIRA claimed that "somebody" told police that he was not there.  FERREIRA claimed to have been hiding behind his bedroom door while police looked for him.  FERREIRA then claimed that no one knows where he lives now because he has the equipment necessary to produce the documents that he formerly had sent from Brazil.  FERREIRA claimed to have an expensive computer and printer on which he produces the documents, and that if the police ever came there he could go to jail for a minimum of one year.  Later the same day, apparently after  the counterfeit visa was removed from CS2's passport, CS2 expressed concern about FERREIRA being able to replace it with an identical document. FERREIRA claimed to have everything on his computer, and that he needed only to print it out.

    21.  During the course of this investigation, and after reviewing this transcript, I received the ICE Alien file for Iolanda Ferreira. Upon reviewing this file, I learned that Iolanda FERREIRA had been arrested by INS agents on May 22, 2001, following seizure by the United States Customs Service of a Federal Express package containing thirty-two blank social security cards and thirty-five blank Brazilian International drivers licenses.  INS agents had accompanied SSA agents in an

attempt to make a controlled delivery of this package to Antony
CABREIRA (a/k/a FERREIRA) at Apartment #1, 156 Chestnut Street in
Everett, Massachusetts.  At the time of her arrest, Iolanda
Ferreira lived at this address with her daughter, Isabel
Ferreria, and husband, FERREIRA, who supposedly was not home.
Iolanda and Isabel Ferreira were placed in deportation
proceedings and both have outstanding Warrants of Deportation.
Both failed to appear in Immigration Court and have been ordered,
in absentia, removed to Brazil.

22.  On September 1, 2004, CS2 met with ICE agents, DSS
agents and  Massachusetts State Police Troopers to prepare for
another monitored meeting and trip to Maine.  CS2 was provided
with the Brazilian Passport with a substituted picture of CS2,
and $1,000.00 in cash.  CS2 and CS2's vehicle were searched for
weapons and contraband.  CS2 was then followed by agents to the
Dunkin Donuts located at 220 Broadway in Somerville,
Massachusetts.

23.  At approximately 7:05 AM, CS2 called me to say that
AMARO and his girlfriend (later identified as Isabel Ferreira)
were in the Dunkin Donuts, and that they would ride with CS2 to
Maine.  According to CS2, AMARO intended to park his car at the
Medford location where CS2's car had been parked on the previous
trip.  At approximately 7:15 AM, after parking the brown Mazda
Protégé (39NH17) on Middlesex Avenue in Medford, Massachusetts,
AMARO and Isabel Ferreira entered CS2's vehicle.  CS2's car was
then followed to the BMV in Kennebunk, Maine.  After arriving at

12

the BMV in Kennebunk at approximately 8:45 AM, CS2, AMARO and
Isabel Ferreira got out of CS2's vehicle.  CS2 went into the BMV,
while AMARO and Isabel Ferreira remained in the BMV parking lot.
Very shortly after, CS2 came out of the BMV and all three got
back into CS2's vehicle.  They drove to the Post Office at 3 Post
Office Square, Kennebunk, Maine where they met with FERREIRA.
FERREIRA was with Ivanice SILVA in the Caravan (67MT33).  SILVA
then entered the Post Office and was observed placing two twenty
dollar bills on the counter.  At approximately 9:15 AM, CS2,
AMARO and Isabel Ferreira drove away in CS2's car.  CS2, AMARO
and Isabel Ferreira were followed from the Post Office to the BMV
in Portland, arriving at approximately 10:25 AM.  All three sat
in the car and then got out of the car at approximately 10:30 AM
and entered the BMV.  At approximately 10:58 AM, all three left
the BMV and entered CS2's vehicle.  CS2's vehicle was then
followed south  to the Kennebunk Sunoco Service Center at 61 Main
Street in Kennebunk.  After several minutes, AMARO and Isabel
Ferreira left the Sunoco in a green, 1997 Plymouth Neon bearing
Massachusetts registration 42DD16 (registered to AMARO).  CS2
followed AMARO back to I-95 and south to I-93.  After AMARO
exited I-93, CS2 followed me to a location in Somerville,
Massachusetts.  AMARO was followed by agents back to the brown
Mazda Protégé (39NH17) parked on Middlesex Avenue in Medford.

    24.  Agents remained in Kennebunk to observe FERREIRA and
SILVA.  After CS2, AMARO and Isabel Ferreira left the Kennebunk
Post Office, FERREIRA drove SILVA to the BMV in Kennebunk.  SILVA

was observed leaving the BMV in Kennebunk at approximately 11:10
AM.  While she and FERREIRA were driving south on I-95, they were
stopped for speeding by Massachusetts State Police.  FERREIRA was
found to have a Massachusetts driver's license in the name Luis
Burigo BECKER, DOB 7/29/60, with an address of 61 Waite Street,
Malden, Massachusetts.

    25.  During debriefing, the Brazilian Passport was retrieved
from CS2.  The passport now contained a counterfeit H-4 non-
immigrant visa in CS2's assumed name and bearing a picture of
CS2, and a counterfeit I-94 Departure Record card with a
counterfeit admission stamp.  The word "Imigration" had been
misspelled on the I-94.  Also retrieved from CS2 were a
counterfeit Brazilian Birth Certificate, a translation of that
certificate into English, and a State of Maine Instruction
Permit.  CS2 told me that the female with AMARO was named Isabel,
and that she was "Toninho"'s daughter.  CS2 said that SILVA was
in the Post Office in Kennebunk to lease a Post Office Box for
AMARO.  CS2 said that AMARO claimed he was going to register a
vehicle in Maine to use for road tests for customers.  CS2 said
that AMARO would receive notice for CS2's road test at his PO Box
and he would notify CS2 of the date of the road test.

    26.  On September 14, 2004, ICE agents in Portland, Maine
were contacted by the Maine Bureau of Motor Vehicles about an
applicant with suspicious documents.  Special Agents Bell and
Melican went to the BMV in Portland, ME and encountered Ronilson
Goncalves DE MELO and Victor MELO, whom they determined to be

Brazilian nationals illegally in the United States. Both were arrested and placed in Deportation Proceedings.

27. DE MELO presented a Brazilian passport containing a counterfeit non-immigrant visa and I-94 to the BMV clerk with his application for a driver's license. The passport was seized by ICE agents at the time of the arrest. MELO acted as a translator for DE MELO. The Agents also observed the blue Dodge Caravan, registration number 67MT33, with two occupants in the parking lot of the BMV. At my request, to avoid arousing suspicion concerning the investigation, Agents Bell and Melican did not approach the Caravan. DE MELO claimed that he had sent away to Brazil for the documents. Also to avoid arousing suspicion, the agents did not ask additional questions about the documents. Upon inspection of the documents, the H-4 non-immigrant visa and I-94 appear to have been created from the same template as the counterfeit H-4 non-immigrant visa and I-94 recovered from CS2. The I-94 also contained the same misspelling of the word "Imigration".

28. On September 27, 2004, ICE agents initiated surveillance of 61 Waite Street, Malden. The Caravan (67MT33) was observed at the rear of the residence at approximately 6:45 AM. At approximately 7:00 AM, FERREIRA left his residence. At approximately the same time, a gray Ford Taurus, Massachusetts registration 95KM26, registered to Fabricio Sousa, parked in front of the residence. (This vehicle has since been registered to AMARO). During a brief interaction between the driver (who

was later identified as AMARO) and FERREIRA, a female came out of the residence and both FERREIRA and the female got into the Ford Taurus.

29.  The Ford Taurus was followed from 61 Waite Street in Malden to the Maine Mall in South Portland, Maine.  (Along the way, the Ford Taurus stopped at a McDonald's parking lot next to the Kennebunk, Maine Post Office, and at the Post Office located at 400 Congress Street in Portland, Maine).

30.  After parking at the Maine Mall, FERREIRA, AMARO and the female were followed into the mall.  FERREIRA split off from AMARO and the female.  AMARO and the female were followed to the BMV branch located at the Mall.  FERREIRA was observed returning to the Ford Taurus.  At approximately 11:30 AM, AMARO and the female left the BMV and walked back through the Mall to where the Ford Taurus was parked.  ICE agents continued to follow the Ford Taurus.  I entered the BMV and obtained photocopies of items which I learned had been submitted by the female to the BMV.  She submitted a Massachusetts driver's license in the name Virginia Cechinel PEDRO and a Brazilian passport containing a B2 non-immigrant visa and a counterfeit I-94.  The I-94 appears to have been created from the same template as the previously seized documents.  It contains the same misspelling of the word "Imigration".

31.  On October 7, 2004, CS2 met with ICE agents and DSS Special Agent Arnfeld to prepare for a meeting and trip to the Bureau of Motor Vehicles in Portland, ME.  CS2 was provided with

the Brazilian Passport with the substituted picture of CS2, ( and which now contained the counterfeit visa and I-94 provided by FERREIRA and AMARO), the previously obtained Maine learner's permit, and $130.00 in cash.

32. At approximately 5:10 AM, CS2 drove into the parking lot of the Dunkin Donuts at 220 Broadway, Somerville, MA, to meet FERREIRA and AMARO. FERREIRA and AMARO were already there in the blue Caravan (67MT33). At approximately 5:15 AM, CS2 left the parking lot of the Dunkin Donuts following the blue Caravan. CS2 then called and told me that there was a third individual with FERREIRA and AMARO. Both vehicles were followed to a location on Middlesex Avenue in Medford. CS2 parked and entered the Caravan. The Caravan was followed to the BMV in Portland, ME.

33. At approximately 9:35 AM, after CS2 took the road test, CS2 entered the Caravan. The Caravan then was followed to the Post Office at 400 Congress Street in Portland, ME. From the Post Office in Portland, the Caravan was followed to the Post Office at 100 Alfred Street in Biddeford, ME, arriving at approximately 10:15 AM. FERREIRA and AMARO entered the Post Office. They remained inside for approximately 10 minutes, came out, and got back in the Caravan. The Caravan then proceeded to the Post Office at 2 Post Office Square, Kennebunk, ME. FERREIRA and AMARO went in the Post Office and came back after a few minutes. From the Post Office in Kennebunk, the Caravan was followed to Rangeway Plaza at 167 Elm Street in Salisbury, MA, arriving at approximately 11:35 AM. There, FERREIRA and AMARO

met with an unidentified male who was driving a red, 1989 Honda
Civic bearing Massachusetts registration 9341KT. After
approximately 15 minutes, FERREIRA and AMARO got back in the
vehicle and proceeded to where CS2's vehicle had been parked on
Middlesex Avenue in Medford, a short distance from the rotary at
routes 16 and 28.

34. CS2 was followed to a pre-arranged meeting location.
During debriefing, the Brazilian Passport containing the
counterfeit visa and I-94 produced by FERREIRA and AMARO and a
Maine learner's permit were retrieved from CS2. CS2 reported
that she failed the road test and a retest had been scheduled for
November 3, 2004. CS2 also reported that the third individual in
the car was named "Arivelton". According to CS2, "Arivelton"
was another customer and had come to see if his new license had
arrived in the mail. Arivelton J. BAUMGRATZ has since had a
Maine driver's license issued to him at an address of Post Office
Box 4543, Portland, ME 04112. According to CS2, this is the same
Post Office Box that CS2 was directed to use by FERREIRA and
AMARO. CS2 further reported that the individual they met in
Salisbury was also a customer.

35. On November 23, 2004, CS2 informed me that FERREIRA had
called to let CS2 know that he had received CS2's Maine driver's
license and to make arrangements to deliver it. FERREIRA
telephoned from 781-605-1018. Information from Comcast Cable
Communications show the subscriber for this number is Luis
BECKAR, with an address of 61 Waite Street, Apartment 2, Malden,

Massachusetts.  CS2 told me that FERREIRA planned to go to Maine
the following day, and would not be back in Massachusetts until
afternoon.  I told CS2 to arrange a meeting the following
afternoon at 3:30 PM.

36.  On November 24, 2004, at approximately 3:00 PM, CS2 met
with ICE agents to arrange for a monitored meeting with FERREIRA
at the Dunkin Donuts at 220 Broadway in Somerville.  At
approximately 3:15 PM, CS2 paged FERREIRA.  FERREIRA called back
promptly and said that he was in Malden and it would take him at
least 20 minutes to get to the Dunkin Donuts.  FERREIRA arrived
at the Dunkin Donuts at approximately 4:41 PM.  FERREIRA was
driving the blue Caravan (67MT33).  The meeting ended at
approximately 4:46 PM.  FERREIRA and CS2 were followed away from
the meeting location.  CS2 returned to a pre-arranged location
for debriefing.

37.  During the debriefing, CS2 gave me the Maine driver's
license that was delivered to it by FERREIRA.  CS2 told me that
FERREIRA said that he planned to try to get driver's licenses in
Massachusetts again soon.

38.  On October 28, 2004, CS1 told me that SILVA was now
recruiting customers for FERREIRA.  CS1 provided a cellular phone
number of 857-888-9667 for SILVA.

39.  On November 30, 2004, another Confidential Source
(registered with ICE as SA-593-BO, and hereinafter referred to as
"CS3") made a telephone call to SILVA. According to CS3, Silva
agreed to meet to provide counterfeit "green cards" and Social

Security Account number ("SSN") cards. CS3 reported to me that
SILVA would provide a set of one SSN card and one "green card"
for $130.00, and that she could also provide Maine drivers
licenses.

40.  On December 6, 2004, CS3 met with ICE agents and agents
of the Social Security Administration, Office of the Inspector
General ("SSA"), to prepare for a  monitored meeting with SILVA.
CS3 and CS3's vehicle were searched for weapons and contraband.
CS3 was provided with two "green-card" style photographs, each
with an invented name and date of birth written on the back, two
scraps of paper, each bearing a signature in one of the invented
names, and $260.00 in cash. (CS3 was intending to purchase two
"green cards" and two social security cards from Silva.) One of
the photographs also had an invented Social Security number
written on the back. CS3 was followed by agents to the Café Belo
at 120 Washington Street, in Somerville, Massachusetts.

41.  At approximately 4:23 PM, CS3 entered SILVA'S vehicle
(a white Audi bearing Massachusetts registration 66YJ49). At
approximately 4:25 PM, CS3 got out of the vehicle. CS3 called me
shortly thereafter to inform me that it was supposed to pick up
the documents from SILVA at the Meadowglen Mall in Medford,
Massachusetts. I met with CS3 at a pre-arranged location. CS3
then followed me in its vehicle to the Meadowglen Mall.

42.  ICE and SSA agents followed SILVA back to her residence
at 83 Central Avenue in Everett. Shortly after arriving at
SILVA'S  residence, the 1997 green Plymouth Neon (42DD16)

arrived.  SILVA met with the occupant of the Neon on the street.

SILVA greeted this person with a kiss and appeared to hand off

the envelope provided by CS3.  Agents attempted to follow the

Neon when it left the SILVA residence, but were unsuccessful.

ICE agents were already in place near 61 Waite Street in Malden.

At approximately 4:57 PM, the Neon was seen parking in front of

61 Waite Street.  The occupant of the Neon got out and entered

61 Waite Street.

43.  At approximately 6:13 PM, SILVA left her residence, got

in her car (the white Audi), and was followed directly to the

Meadowglen Mall.  SILVA arrived at the mall at approximately 6:30

PM and waited in the lot.  At approximately 6:20 PM, someone

matching FERREIRA's description left 61 Waite Street, entered the

Neon and was followed by agents most of the way to the Meadowglen

Mall.  Agents lost sight of the vehicle shortly before arriving

at the mall, but shortly thereafter the vehicle was seen in the

lot near where SILVA had parked.  At approximately 6:40 PM, SILVA

left her parked vehicle, walked to the Neon and got inside.

Shortly thereafter, SILVA got out of the Neon and walked into the

mall.

44.  After SILVA went into the mall, the occupant of the

Neon moved the Neon next to where SILVA had parked, got out of

the Neon, and entered SILVA's vehicle.  One of the agents present

recognized the occupant as FERREIRA.

45.  At approximately 6:45 PM, SILVA met with CS3 in the

mall food court.  Agents observed SILVA and CS3 in the food court

21

until approximately 6:57 PM.  SILVA then left the mall.  Agents
in the parking lot saw SILVA get into her white Audi and drive
out of the mall parking lot with FERREIRA.

46.  During debriefing, CS3 told me that after leaving the
mall, SILVA was planning to  deliver Maine licenses.  CS3 said
that SILVA claims she takes people to Maine to obtain driver's
licenses on her own, but that someone makes the visas for her.
CS3 said that SILVA claimed to charge $1500.00 to get a Maine
driver's license if a person had a visa in their passport and
$1800.00 if the person did not have a visa in their passport.

47.  CS3 gave me two counterfeit I-551s and two counterfeit
SSN cards provided to her by SILVA, the original "green card"
style pictures, and the scraps of paper with signatures on them.
The counterfeit I-551s bear the images of the photographs
provided by CS3 to SILVA.  One counterfeit I-551 retrieved from
CS3 bears the name Fernando SILVA, date of birth 10/02/80, and
alien registration number A073642698.  The other I-551 bears the
name Silvia Nobrega XAVIER, date of birth 04/24/77, and alien
registration number A072536439.  Both alien registration numbers
relate to other individuals, and not those pictured on the I-
551s.  Both I-551s appear to have been generated from a computer
template where a photograph has been scanned into a computer and
superimposed over that template.  The signatures on both cards
also appear to have been added to the cards in this manner.  The
fingerprints that appear on the cards are identical.  The SSN
card stock may have been produced on a computer, but the names

and numbers on them appear to have been typed with a typewriter.
A typographical error is visible on the SSN card in the name
Silvia Nobrega XAVIER. Specifically, an "X" has been lifted with
correction tape from the space between Nobrega and XAVIER. There
has been care in attempting to reproduce the security feature of
micro-line printing on the signature line. Specifically, when
viewed through a magnifying glass, the words Social Security
Administration are repeated seven times to form the signature
line.

48. In total, CS2 purchased four fraudulent documents (a
fraudulent non-immigrant visa, a fraudulent I-94 departure record
with fraudulent admission stamp, a fraudulent Brazilian birth
certificate, and a fraudulently obtained Maine State driver's
license) from FERREIRA and AMARO. I have reviewed the documents
and have determined that with the exception of the Maine driver's
license, which is genuine, they are counterfeit identification or
immigration documents.

49. In total, CS3 purchased four fraudulent documents from
SILVA (two fraudulent green cards and two fraudulent social
security cards). I have reviewed those documents and have
determined that they are counterfeit identification or
immigration documents.

50. Thirty of the thirty-two blank, counterfeit social
security cards intended to be delivered to FERREIRA have been
obtained by me from Special Agent Steven Wells of the Social
Security Administration.

51.    In cooperation with investigators from the Maine Bureau of Motor Vehicles, to-date, at least thirty-five people have been identified as obtaining or attempting to obtain valid Maine drivers licenses in the same manner as CS2 and Ronilson Goncalves DE MELO.    These people have used various Post Office boxes in common in Biddeford, Kennebunk, Portland, and Springvale, Maine. I have obtained photocopies from the Maine Bureau of Motor Vehicles of documents produced by seventeen of these thirty-nine people, and all seventeen of the I-94 Departure Records I obtained are counterfeit, and include the same misspelling of the word "Imigration".

52.    Based on the facts set forth above, there is probable cause to believe: that on various dates between July 6, 2004 and December 6, 2004, FERREIRA knowingly forged, counterfeited, altered or falsely made immigration documents in violation of 18 U.S.C. §1546(a); that FERREIRA, AMARO and SILVA each possessed obtained, accepted, or received such immigration documents knowing them to be forged, counterfeited, altered, falsely made or unlawfully obtained in violation of 18 U.S.C. §1546(a);    that FERREIRA, AMARO and SILVA each knowingly possessed an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States which was stolen or produced without legal authority knowing that such document or feature was stolen or produced without such authority in violation of 18 U.S.C.

24

§1028(a)(6); and that FERREIRA, AMARO and SILVA each conspired to commit those crimes in violation of 18 U.S.C. §§1028(f) and 371.

SETH PLUMB
SPECIAL AGENT, ICE

Sworn and subscribed to me this _16th_ day of February, 2005.

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

25

✎JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____    Category No. _II_____    **Investigating Agency** _ICE_____

**City** _____    **Related Case Information:**

**County** _Middlesex_____    Superseding Ind./ Inf. _____    Case No. _____
                                        Same Defendant _____    New Defendant _____
                                        Magistrate Judge Case Number    _____
                                        Search Warrant Case Number    _____
                                        R 20/R 40 from District of    _____

**Defendant Information:**

Defendant Name _Ivanice Silva_____    Juvenile    ☐ Yes    ☒ No

Alias Name _____

Address _____

Birth date (Year only): _____ SSN (last 4 #): _____ Sex ___ Race: _____ Nationality: _____

**Defense Counsel if known:** _____    **Address:** _____
                                                    _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA _Christopher F. Bator_____    **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No    **List language and/or dialect:** _____

**Matter to be SEALED:** ☒ Yes    ☐ No

    ☒ **Warrant Requested**    ☐ **Regular Process**    ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ in _____ .
☐ **Already in State Custody** _____    ☐ **Serving Sentence**    ☐ **Awaiting Trial**
☐ **On Pretrial Release:  Ordered by** _____ on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty _____    ☐ Misdemeanor _____    ☒ Felony    4

**Continue on Page 2 for Entry of U.S.C. Citations**

☐    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

**Date:** _2/16/05_    **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant** ___Ivanice Silva_____

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| **Set 1** | 18 USC §1546(a) | Possessing Counterfeit Immigration Documents | |
| **Set 2** | 18 USC §1028(a)(6) | Possessing Illegal ID Documents/Authentification Features | |
| **Set 3** | 18 USC §1028(f) | Conspiracy | |
| **Set 4** | 18 USC §371(f) | Conspiracy | |
| **Set 5** | | | |
| **Set 6** | | | |
| **Set 7** | | | |
| **Set 8** | | | |
| **Set 9** | | | |
| **Set 10** | | | |
| **Set 11** | | | |
| **Set 12** | | | |
| **Set 13** | | | |
| **Set 14** | | | |
| **Set 15** | | | |

**ADDITIONAL INFORMATION:**